Good morning, Your Honors. May it please the Court, Liliana Galelli appearing on behalf of the petitioner. I would like to reserve two minutes for rebuttal. My client from El Salvador faces deportation, and this is due to the lower agency's decisions that are flawed and unsubstantiated. Now, my client faces what is essentially a death sentence in his home country. Before coming to the United States, Mr. Quinteros was beaten and slashed on the face. The same man held his brother captive for over a month and tortured him. And his father was murdered by a machete and shot by the same man. So the IJ here made an adverse credibility determination. And, in fact, the incident you mentioned about him having an encounter with the Bonilla brothers, the Court said that was part of the adverse credibility determination because he hadn't put it in his initial application and just raised it later. And our case law says, yes, you can base an adverse credibility decision on that. So what do we do about the adverse credibility determination? Well, Your Honor, the case law that I believe you're alluding to is Zamano v. Holder. Well, there's Alvarez-Santos as well. I mean, we have a number of cases on that point. Yes, Your Honor. Well, I think those cases can be distinguished from Mr. Quinteros' situation. He did amend his declaration from his initially submitted one, but he submitted it well before the hearing pursuant to the practice manual for the EOIR. And even right before the first merits hearing, the judge asked Mr. Quinteros for pages of colloquy whether he had made sure that his declarations as submitted on that day, August 29, 2012, were complete and were going to be consistent with his testimony. He ascertained that Mr. Quinteros affirmed that it was, and, therefore, they proceeded with the testimony. Later, the judge turns around and says, well, you know, too bad. You didn't include it in your initially submitted application in 2009. So I'm going to draw a negative inference. Your Honor, these people that are seeking asylum in the United States have been traumatized. When Mr. Quinteros was asked by the judge at the merits hearing, why did you not include it? Mr. Quinteros gave a very good reason, because I was afraid. I was afraid because I was facing deportation. But when my attorney advised me to include it in the declaration right before, you know, pursuant to, that was timely submitted, pursuant to the practice manual, I did, because it was important. Was the IJ obligated to accept that explanation? Yes, Your Honor. What cases does the IJ have to accept that explanation? Well, it's important because the weight of that evidence is to the crux of the claim. It's very important for the court. What did the IJ say in response to his explanation? Well, the IJ just disregarded it and dismissed it. They found that, he found that this was a credibility issue, and he said that this, even though he raised his eyebrows about, you know, him not having included it in the beginning, he actually based his claim on the fact that there were inconsistencies in his testimony. So that was relegated to a secondary consideration when he made his adverse credibility finding. In fact, the IJ, the heart of the IJ's decision was based on the fact that Mr. Contreras, at one point, said that his father was alive, but throughout four days of testimony and countless hours of testimony that was consistent that he said that his father was dead when he arrived at the scene. The IJ based his decision on the fact that, you know, in eight words, at one point in cross-examination, and the IJ's examination, he said that he was alive. You know, we can all agree that, you know, when you see somebody, you don't necessarily ascertain whether the person is alive or dead. But importantly, Your Honors, this is an immaterial fact that the IJ was basing his decision on, because what is important here is that his father was dead, and this was provided as evidence to corroborate what my client was going to, the fate that he was going to face if he did not flee for his life. So the important and material consideration here was whether the father was killed and why, and not, you know, whether he was dead or alive when Mr. Contreras arrived at the scene. As far as the — Let me ask you a question. You put aside for a moment the adverse credibility determination. Yes. Other evidence was presented. Yes, Your Honor. The death certificate of his father, a declaration from a justice of the peace regarding the Bonilla brothers, a couple of other declarations, one from his mother. And the IJ took a look at those to see if maybe those, if that body of evidence supported a finding that more likely than not Mr. Zavala would be subject to persecution if he were to return to El Salvador. Did you argue that that, he met his burden with that chunk of evidence? Yes, Your Honor. Setting aside the credibility? Setting aside. Just taking his testimony and saying, okay, it's, can't weigh on it, can't give it any weight, but this other evidence supports his entitlement to relief. Yes, Your Honor. In a withholding of removal analysis, a claim, the first thing, the first burden that we have to meet is whether there was persecution. Then we get into the nexus and whether it was a protected ground and all of that. And so Mr. Contreras had a burden of proof to show that he had suffered past persecution or feared future persecution. On account, I believe it was on account of political opinion was the basis that you were claiming here. Yes, Your Honor. Yes, that was the ground. So it's not enough to show that the father was murdered, but it would have to be on account of his political opinions. Correct. That's right, Your Honor. And the political opinion can be imputed, although here there was testimony. So that was based on his testimony, right, Mr. Contreras? Yes, that's right. There was testimony that he was involved in the Arena Party and the Bonilla Brothers of the FMLN. But what happens if we put that aside as not being credible? That's right, Your Honor. So the objective evidence that was so summarily dismissed by the IJ, and Your Honor is correct in naming all of the pieces of evidence, the news article, a news article is very strong objective evidence that corroborates a very salient fact in his claim, the news article about his father's murder. That, the IJ's reasoning was that there was no motive in the news article. How many? Did it say it was on account of political opinion? It did not, Your Honor. Okay. I didn't see that either. It did not. And it's correct to say that there is no motive stated in the article. That's true. However, the Real ID Act does require that there is objective evidence be presented in support of the claim. But I remind this Court that testimony alone is sufficient to meet the burden. And this, Mr. Contreras, not only had his testimony, which was unfortunately disregarded, he also had ample objective evidence. One by one, the IJ went through them and dismissed each piece of evidence for what I submit was unsubstantiated. The father's death certificate, he said there was no motive stated on the death certificate. Well, it was presented to corroborate how he was murdered by machete and firearm. The police report, it named the actual killers. Do you want to save a little bit for rebuttal? Yes, Your Honor. Okay. You've got it. Yes, thank you, Your Honor. A minute, three seconds. Yes. And for these reasons, we ask that at least there be a remand to the BIA so that this person gets to stay in court and is able to set forth the basis for his claim. Thank you very much. Good morning, Your Honors. Jonathan Ross for the Attorney General. The point that is really at issue in this case, as Your Honors have already pointed out, is the credibility of Mr. Contreras Zavala. And as the immigration judge found, which the BIA affirmed, he did not testify credibly. In fact, the immigration judge cited a number of inconsistencies and omissions, which under the Real ID Act, even one of those is sufficient to render someone's testimony not credible. Because the immigration judge gave specific and cogent reasons, the adverse credibility finding is supported. And again, just because this is a Real ID Act case, it's also important to note that even if this Court finds that substantial evidence only supports one of these issues identified by the immigration judge, then the petition for review should be denied. I also want to correct the record just for a moment here. In regards to the omission identified by my colleague about the — in the initial declaration, there wasn't an attack, and in the subsequent, there was. The explanation he gave before the immigration judge was not that he was traumatized. The explanation he gave is that he didn't think that it was important, that he didn't think that it was necessary were his exact words. And when the immigration judge confronted him with this, as is his obligation under the case law of this circuit, he gave the explanation later on that I didn't want to be deported. Not only was this response nonresponsive, but the immigration judge was free at that point to define that major inconsistency, a personal attack to his body where no other personal attack occurred in his original declaration as a substantial issue in determining his credibility. And again, this was a finding that the Board of Immigration Appeals upheld. The second issue is the inconsistency regarding the death of his father. Initially, he testified that his father was alive when he reached the scene of the accident. It was only on cross-examination when it came up again he began to be evasive. He was not answering the judge's questions. And the judge went through great lengths to say, please, I'm going to ask you the question again. Please only answer what I've asked. And at that point, he said, oh, well, when I showed up to the scene, my father was dead. Now, as far as Petitioner's argument that perhaps the body was he still had some life left in him, unfortunately, that is an argument that the immigration judge already considered, as did the board. And they were not required, as Your Honors pointed out before, they were not required to accept that explanation, especially considering the evasiveness. I thought they were supposed to give a cogent sort of reason why they don't accept it. Yes, Your Honor. So, you know. And it has to be supported by the record. Yes, Your Honor, you're absolutely correct. However, in this case, it was supported by the record because his testimony involving the inconsistency was evasive in addressing not only the initial confrontation, the initial part when the inconsistency arose, when he was not giving direct answers, but subsequently when he started talking about other testimony that wasn't even relevant. So the immigration judge did give specific and cogent reasons why he didn't accept that explanation. Well, you know, his explanation when he appeared on the scene, it appeared to him that his father was alive. And then later he says, well, he was really dead. Under the circumstances, I mean, that doesn't seem implausible. Perhaps. Yes, Your Honor. However, he wasn't so explicit. In fact, rather the contrary. He specifically said to the immigration judge, when I arrived, my father was alive. And, again, to my previous point, given that there was already this waffling in the record, he wasn't required to accept the explanation when Mr. Contreras-Zavala was trying to adapt his testimony to conform to the version that ultimately came out. So these are the two inconsistencies that are — that the board affirmed on, that the immigration judge found, and that are — the record compels that — the record compels that this is the — the record compels this — I'm sorry. The record does not compel a contrary finding. So what about the objective evidence that was admitted? Yes, Your Honor. The immigration judge fully weighed and considered the objective evidence, including the statement from the Justice of the Peace, the news article, the statement from the mother, and the death certificate, and found that even if he was credible, even if he did present credible testimony, the objective evidence didn't support — didn't offset the — his previous credibility issues. Was it argued to — did Petitioner argue to the BIA that just looking at the objective evidence, it was enough to support his claim that he would suffer persecution — more likely to not suffer persecution if he returned? In other words, without his credible testimony, that the other evidence in the record was sufficient to show that he had been persecuted on account of political opinion. There — as far as the — I would have to — the government would have to double check to see whether or not that was argued. If my memory is correct — I was just curious because the BIA didn't — the IJ addressed all that, but the BIA didn't say anything. Correct. I — the government observed that as well. However, the board, when they affirmed the immigration judge's decision, it seemed that they accepted it at whole. And where the immigration judge really went into detail weighing each piece of evidence individually, found that overall it supported the adverse credibility finding. If Your Honors have no further questions, the government rests on the brief. Okay. Thank you. Thank you. In rebuttal, Your Honors, again, I submit that the fact that the death was — whether the — Mr. Quintero's found his father dead or alive was collateral and immaterial. And I'd like to point out that the BIA made two errors in its decision. It said that he said that his father was alive twice in the record, and that is incorrect. And also, the BIA made a factual finding, finding that the testimony was evasive overall. And that is a de novo review. And the BIA is subject to a reversible error by this court. Thank you very much. Thank you, counsel. We appreciate your arguments on this matter. It's submitted. And —
judges: Paez, Ikuta, Vitaliano